### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELIZABETH SOUZA BOLT, )<br> )<br>  Plaintiff, )<br> )<br>v. )<br> )<br>ROSE STATE COLLEGE BOARD OF )<br>REGENTS, BARBARA BAUMEISTER, )<br>DEBRA CRAIG-COHAGAN, BRENDA )<br>LOMAS, SSM HEALTH CARE OF )<br>OKLAHOMA, INC., )<br> )<br>  Defendants. ) | Case No. CIV-21-1102-HE |

### COMPLAINT

Plaintiff Elizabeth Souza Bolt ("Bolt"), for her cause of action against Defendants Rose State College Board of Regents, Barbara Baumeister, Debra Craig-Cohagan, Brenda Lomas, and SSM Health Care of Oklahoma, Inc., alleges and states:

### The Parties

1. Plaintiff Elizabeth Souza Bolt at all material and relevant times herein mentioned resided within the bounds of the Western District of Oklahoma.

2. Defendant Rose State College Board of Regents has administrative, managerial, and supervisory control and oversight over Defendant Rose State College, which is an educational institution that sits in Midwest City, Oklahoma, within the bounds of the Western District of Oklahoma.

3. On information and belief, Defendant Barbara Baumeister ("Baumeister") at all material and relevant times herein mentioned resided within the bounds

   of the Western District of Oklahoma and was the Dean of the Health Sciences Division at Rose State College.

4. On information and belief, Defendant Debra Craig-Cohagan ("Craig-Cohagan") at all material and relevant times herein mentioned resided within the bounds of the Western District of Oklahoma and was the Director of Nursing at Rose State College's Health Sciences Division.

5. On information and belief, Defendant Brenda Lomas ("Lomas") at all material and relevant times herein mentioned resided within the bounds of the Western District of Oklahoma and was a Professor of Nursing at Rose State College's Health Sciences Division.

6. On information and belief, SSM Health Care of Oklahoma, Inc. ("SSM"), is a domestic corporation with its principal place of business within the bounds of the Western District of Oklahoma.

## Jurisdiction and Venue

7. This action is brought under 42 U.S.C. § 1983, and the Federal Due Process Clause of the Fourteenth Amendment to the United States Constitution, and jurisdiction is based upon 28 U.S.C. § 1331.

8. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a) to adjudicate her claims arising under state law.

9. Venue is proper in this district under 28 U.S.C. § 1391(b).

## Factual Allegations

10. Bolt has worked as a Licensed Practical Nurse for over a decade.

11. Throughout her career, she has had a reputation for being an honest and hard worker.

12. In fact, since 2016, Bolt has been working for the federal government, first with the prison system and later with the Veterans Administration, and she has consistently received *meets expectations* and *exceeds expectations* ratings in her annual performance reviews.

13. Bolt has been very happy working for the federal government as a nurse and wanted to remain employed in the federal sector as a healthcare worker.

14. Since around 2012, Bolt has been developing a plan to move her family to California to be closer to family in the San Francisco Bay area, including her mother who is in her 70s and may soon be needing assistance from her children.

15. Bolt performed extensive research on nursing jobs in the area with the federal government and determined that to be able to afford to live in California and care for her mother and to work few enough hours to see her family, she needed to become licensed as a Registered Nurse. Bolt determined that as a Registered Nurse, working in the federal sector in California, she would earn, at a minimum, about $106,000.00 annually.

16. In the Fall of 2018, Bolt began her studies at Rose State to complete a degree that would allow her to become licensed as a Registered Nurse, which was the first step in her plans, as described above.

17. Shortly before Bolt was set to graduate from Rose State's nursing program at the end of the Fall 2020 semester, on or about November 13, 2020, around 1:00 p.m., Bolt was called into the office of Craig-Cohagan, the Director of Nursing at Rose State's Health Sciences Division, to meet with Craig-Cohagan and Lomas, a nursing instructor at Rose State.

18. During the meeting, Lomas told Bolt that Lomas had been contacted by a fellow faculty member, Angela Wicker, who had heard a report from Doug Hatch at SSM that Bolt had called an SSM employee (who is alleged to have been identified as Tasha Bell ("Bell")) and that Bolt impersonated Ikiera Irie ("Irie"), a nurse to which Bolt had been told that she had been assigned to complete her preceptorship, and that Bolt tried to get Irie's schedule.

19. During this meeting Bolt was told by Craig-Cohagan that she would not be preceptoring at SSM and, according to Lori David at SSM.

20. Further, in this meeting Lomas told Bolt that SSM had said that Bolt was "not allowed as a student in [their] facility or any other Saints facilities. And she's not ever welcome to come apply [there]."

21. Later, about 23 minutes into the meeting, Bolt was presented a withdrawal form and a student–faculty conference report that reflected a recommendation, stating that Bolt was being dismissed from Rose State's nursing program, with no option to return. Both documents, dated November 13, 2020, needed Bolt's signature. Bolt refused to sign the forms and

adamantly denied the allegations that Lomas and Craig-Cohagan presented to her.

22. Bolt asked what she could present to disprove the allegations, and Craig-Cohagan said she needed phone records.

23. Despite presenting Bolt with a withdrawal form and a student–faculty conference report that reflected a recommendation stating that Bolt was being dismissed from Rose State's nursing program, with no option to return, Lomas admitted during the above meeting that no actual evidence had been collected. Lomas attempted to act as if no decision had been made and as if Rose State was simply collecting evidence by hearing Bolt's side of the story, saying that they called Bolt in to hear her side and that they were "just trying to get to the truth."

24. Although Lomas and Craig-Cohagan admitted that they were only in the beginning stages of collecting evidence on November 13, 2020, the appeal decision, which eventually was sent to Bolt on January 21, 2021, shows that the decision was made to dismiss Bolt four days earlier, on November 9, 2020.

25. Further, only minutes after the above meeting (which started at 1:00 p.m. on Friday, November 13, 2020) Justin Lopez, an SSM employee and the supervisor of Bell and Irie, sent an email with an attached text message from Irie that appears to be the communication that set the above-described events in motion.

26. Only hours after the above meeting, Lopez sent an email to Bell (the person that claims she received a call from Bolt in which she allegedly impersonated Ikiera Irie), saying the following:

    "Can you email a statement, to me, regarding the nursing student that pretended to be Kiera? They are going to dismiss her from their program, but need a little more documentation."

27. Taken in context, these communications strongly suggest that someone from Rose State had called SSM almost immediately after the above meeting at 1:00 p.m. on Friday, November 13, 2020, and told someone from SSM that Rose State had already decided to dismiss Bolt, but that Rose State needed minimal documentation to support that decision.

28. The above-described text message that set these events in motion (which Rose State had not seen until November 13, 2020—after the decision to dismiss Bolt had been made) reads as follows:

    "Justin I'm so sorry to bother you with this. When Taylor told me she would not be precepting with me, I was not aware the school would try to put another student with me. The student with the first name Elizabeth [Bolt] called asking for my schedule. Which is not a problem. Except for the fact that Tasha [Bell] told me she called back later pretending to be me asking for my schedule again. I would like to refuse to take this student because I do not feel comfortable precepting someone who is so unethical they would pretend to be someone else."

29. The above text message was sent by Irie to her supervisor, Justin Lopez, on Friday, November 6, 2020.

30. In later texts in the chain, Irie alleged that the above-described events occurred on Wednesday, November 4, 2020.

31. Irie further stated on the text chain that "Tasha [Bell] actually [thought] it was a prank call" and that "it wasn't until this morning when they called again that we realized it was a student." The texts were sent on Friday, November 6, 2020, which would indicate that the allegation was that Irie and Bell determined on November 6 that Bolt was the student at issue.

32. As alluded to above, on Friday, November 13, 2020, Mr. Lopez forwarded the above text chain to Lori David, Education Coordinator for SSM, who forwarded it to Lomas, who then forwarded it to Craig-Cohagan and Barbara Baumeister at Rose State on the same date.

33. On Saturday, November 14, 2020, Bell sent the following email, at the request of her supervisor, Lopez:

> From: "Bell, LaTasha" <LaTasha.Bell2@ssmhealth.com>
> Date: November 14, 2020 at 4:02:09 AM CST
> To: "Lopez, Justin" <Justin.Lopez@ssmhealth.com>
> Subject: Re: Nursing student issue
>
> The student that was supposed precepting with Kiera called at shift change, 1900, and became upset that I would not give Kiera's number or schedule out. I told the student that she would have to call back and speak to Justin, the ER manager. Later, I was told that Kiera was calling for me and was on hold. When I answered the phone, I immediately knew it was not Kiera and asked what I could do for the person and the person continued to say she was Kiera and that I should know her. The person then hung up the phone but before they did, I noticed that it was the same phone number that the student called from.
>
> Tasha B.

34. On the same date, Lopez forwarded Bell's email to Lori David, SSM Education Coordinator, and on Monday, November 16, 2020, Lori David forwarded the email to Debra Craig-Cohagan and Brenda Lomas explaining that "Justin had the charge nurse write up what happened."

35. The above allegations made by SSM employees and communicated to Rose State about Bolt are the only evidence that Rose State relied on in deciding to dismiss Bolt from their nursing program.

36. Importantly, Bolt was never given an opportunity to confront or cross examine her accusers.

37. There are significant readily apparent inconsistencies between the facts recounted in the text messages and those recounted in the email from Bell. Specifically, the text messages say nothing about matching a phone number to Bolt on Wednesday, November 4, 2020, (when Bolt allegedly called in pretending to be Irie) and suggest that Bolt was not identified as the caller until she called again, on the morning of Friday, November 6, 2020. Yet the email suggests that Bell matched up the phone numbers when the student called a second time on November 4, 2020, pretending to be Irie.

38. Bolt has consistently denied that she ever called SSM pretending to be Irie. Bolt further presented evidence, in the form of phone records that show every time she called SSM on the dates in question, that disproved the allegation that she called in at shift change, at 7:00 p.m. on Wednesday, November 4, 2020. The phone records show that there was no call at shift change at 7:00

p.m. (1900 hours) on November 4, 2020. Importantly, shift change is a hectic and significant period in a nurse's shift, and a nurse would not have simply misremembered whether an event took place at shift change within days of the underlying event.

39. There was a hearing before Craig-Cohagan and Lomas on December 2, 2020. Without further inquiry, Craig-Cohagan stated that she did not believe the phone records presented by Bolt were accurate because they reflected five calls, when Bolt had said during the November 13, 2020 meeting (without the benefit of her phone records) that she called St. Anthony's four times. The decision to disregard these phone records—the most solid evidence in the matter—offended Bolt's right to due process.

40. Further, the failure to allow Bolt an opportunity to confront and cross examine her accusers in a situation in which witness credibility was clearly at issue offended Bolt's right to due process.

41. Despite the above inconsistencies and contrary evidence, in the decision on Bolt's appeal of her expulsion, which was postmarked on January 21, 2021, Barbara Baumeister, the Dean of the Health Sciences Division at Rose State, deferred to an alleged account from Bell and Irie, which she described as follows:

> Ms. LaTasha Bell is a charge nurse on the evening shift at SSM ER. Tasha confirmed that she had taken a message for Kiera from a student on Wednesday, November 4, 2020. She wrote down Ms. Bolt's name and phone number to give to Kiera. Later that evening, Tasha took another phone call. The caller identified herself as Kiera requesting her work schedule. Tasha knows Kiera and stated that the voice did not sound like her. Ms. Bell noted that the phone number from the second call was the same as the one that she had written down from the earlier call from the student.
>
> Ms. Ikera Irie stated that on November 5, 2020, Tasha asked her if she had called the prior day asking for her schedule. Kiera stated that she told Tasha that she had not. Tasha told her that someone had called and said that they were Kiera asking for her schedule. Tasha told Kiera about the two phone calls and that she believed it was Ms. Bolt both times. Kiera contacted Mr. Justin Lopez (SSM ER Clinical Manager) and told him she did not want to preceptor this student "who is so unethical they would pretend to be someone else".

42. Although Rose State's factual determinations bear more resemblance to the email sent by Bell than the text messages sent by Irie, both the emails and text messages are inconsistent with the ultimate factual determinations made by Rose State. More important, the factual determinations disregarded the contrary evidence presented by Bolt.

43. Throughout Bolt's interaction with Rose State, it became clear that Rose State was not interested in giving Bolt a genuine opportunity to be heard and that the decision to dismiss her from the program was predetermined, as soon as the false and malicious statements were made by SSM.

44. The appeal decision sent on January 21, 2021, also makes clear that the repercussions for Bolt, which included (1) an assignment of an F grade for Bolt's Fall 2020 PNC IV Course, (2) Bolt's dismissal from Rose State's nursing program, and (3) Bolt's disallowance from enrolling in any coursework or programs in Rose State's Health Sciences Division, were caused by the allegations about Bolt that were made by various SSM

employees. This makes clear that Bolt's damages were caused by the false and malicious statements described above.

**FIRST CAUSE OF ACTION—VIOLATION OF BOLT'S RIGHTS TO SUBSTANTIVE DUE PROCESS UNDER THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUION AGAINST DEFENDANTS BAUMEISTER, CRAIG-COHAGAN, AND LOMAS BY WAY OF 42 U.S.C. § 1983**

45. Bolt incorporates the above paragraphs by reference.

46. The dismissal of a student by a public educational institution is a deprivation within the Fourteenth Amendment to the United States Constitution.

47. The Defendants must recognize a student's legitimate entitlement to a public education as a property interest that is protected by due process rights under the Fourteenth Amendment to the United States Constitution.

48. Bolt also has protected liberty and/or property interests in her investment in her education, her professional reputation, her earning ability and potential, and the value of her education and privacy.

49. An exclusion from a public educational institution, in whole or in part, for disciplinary reasons and/or failure to comply with academic standards is within the protection of the Fourteenth Amendment to the United States Constitution.

50. Bolt's right to substantive due process was also denied by the failure of Defendants to apply fair and impartial procedural policies. Bolt was not afforded the opportunity to be heard by an impartial and disinterested tribunal in an adjudicative process where the procedures employed were appropriate

for the interests at stake. Bolt was not afforded the right to cross-examine witnesses in a situation in which witness credibility was important. The processes employed by Defendants were fundamentally unfair, were arbitrary, capricious, lacked a rational basis, and shocked the conscience.

51. Each of the foregoing due process violations, as well as Bolt's dismissal, constituted deprivations of Bolt's substantive due process rights under the Fourteenth Amendment to the United States Constitution.

52. The actions of Defendants were the product of arbitrary state action rather than conscientious, careful, and deliberate exercises of professional judgment. Furthermore, Defendants' actions were based on nonacademic and constitutionally impermissible reasons.

53. Defendants acted under color of state law.

54. Defendants knew or should have known that their actions complained of herein violated clearly established federal rights.

55. Defendants worked individually and/or in conspiracy with one another to violate Bolt's rights complained of herein.

56. Bolt has incurred damages due to the substantive due process violations including but not limited to paid tuition and fees, lost wages, value of professional services, reputational damage, emotional damage, and lost enjoyment of life.

**SECOND CAUSE OF ACTION—VIOLATION OF BOLT'S RIGHTS TO PROCEDURAL DUE PROCESS UNDER THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUION AGAINST DEFENDANTS BAUMEISTER, CRAIG-COHAGAN, AND LOMAS BY WAY OF 42 U.S.C. § 1983**

57. Bolt incorporates the above paragraphs by reference.

58. The dismissal of a student by a public educational institution is a deprivation within the Fourteenth Amendment to the United States Constitution.

59. The Defendants must recognize a student's legitimate entitlement to a public education as a property interest which is protected by due process rights under the Fourteenth Amendment to the United States Constitution.

60. Bolt also has protected liberty and/or property interests in her investment in her education, her professional reputation, her earning ability and potential, and the value of her education and privacy.

61. An exclusion from a public educational institution, in whole or in part, for disciplinary reasons and/or failure to comply with academic standards is within the protection of the Fourteenth Amendment to the United States Constitution.

62. Bolt's right to procedural due process was also denied by the failure of Defendants to apply fair and impartial procedural policies. Bolt was not afforded the opportunity to be heard by an impartial and disinterested tribunal in an adjudicative process where the procedures employed are appropriate for the interests at stake. Bolt was not afforded the right to cross-examine witnesses in a situation in which witness credibility was important. The

processes employed by Defendants were fundamentally unfair, were arbitrary, capricious, lacked a rational basis, and shock the conscience.

63. Bolt was not afforded an appropriate level of process. The level of process that Bolt sought would have been applicable to her asserted liberty and property interests.

64. The appropriate level of process and additional safeguards that Bolt seeks would have greatly impacted her liberty and property interests and would have had a high probative value in the overall process.

65. The additional fiscal and administrative burdens on Defendants stemming from the process Bolt seeks, if any, would be minimal.

66. Each of these due process violations, as well as Bolt's dismissal, constituted deprivations of Bolt's procedural due process rights under the United States Constitution.

67. Defendants acted under color of state law.

68. Defendants knew or should have known that their actions complained of herein violated clearly established federal rights.

69. Defendants worked individually and/or in conspiracy with one another to violate Bolt's rights complained of herein.

70. Bolt has incurred damages due to the procedural due process violations including but not limited to paid tuition and fees, lost wages, value of professional services, reputational damage, emotional damage, and lost enjoyment of life.

## THIRD CAUSE OF ACTION—INTENTIONAL INTERFERENCE WITH CONTRACT AGAINST SSM

71. Bolt incorporates the above paragraphs by reference.

72. Bolt had a contractual relationship with Rose State that entitled her to continued education, as a result of her entering into an enrollment agreement with Rose State and paying tuition and fees in accordance therewith.

73. SSM employees, including Bell, Irie, Lopez, and David, knew or should have known about Bolt's contractual relationship with Rose State.

74. As alleged above, multiple SSM employees, including Bell, Irie, Lopez, and David intentionally interfered with Bolt's contract with Rose State by making false and malicious allegations about Bolt, falsely alleging to Rose State that Bolt impersonated Irie and tried to obtain her schedule by dishonest means.

75. The above-described conduct by SSM employees was improper.

76. The above SSM employees in making the above statements and interfering with Bolt's contract with Rose State, at all relevant times, acted within the course and scope of their employment with SSM.

77. Bolt has incurred damages because of the false and malicious statements, including but not limited to paid tuition and fees, lost wages, future earning ability, value of professional services, reputational damage, emotional damage, and lost enjoyment of life.

Respectfully submitted,

s/Jonathan M. Irwin
Jonathan M. Irwin, OBA #32636
Ward & Glass, L.L.P.
1601 36th Avenue N.W., Suite 100
Norman, Oklahoma 73072
405-360-9700
405-360-7902 (fax)
jonathan@wardglasslaw.com
ATTORNEYS FOR PLAINTIFF

**JURY TRIAL DEMANDED**
**ATTORNEY'S LIEN CLAIMED**